DAVIS, Appellant,

v.

BLACK;  Episcopal Diocese of Southern Ohio et al., Appellees.

[Cite as *Davis v. Black* (1991), 70 Ohio App.3d 359.]

Court of Appeals of Ohio,
Franklin County.

Nos. 90AP–756, 90AP–912.

Decided Nov. 5, 1991.

*John S. Marshall,* for appellant.

*Arter & Hadden, Louis E. Gerber* and *Gary Batke; Carlile, Patchen, Murphy & Allison, Denis J. Murphy* and *Linda Miller; Portugal & Singer* and *Gerald Portugal,* for appellees.

---

WHITESIDE, Judge.

Plaintiff, Catherine Davis, appeals from judgments of the Franklin County Court of Common Pleas granting motions for summary judgment of defendants Episcopal Diocese of Southern Ohio, Reverend John Fisher, and St. James Episcopal Church. In support of her appeal, plaintiff raises three assignments of error (labeled "Statement of Issues") as follows:

"I. Whether the trial court erred in granting St. James Episcopal Church's motion for summary judgment on Counts I, II, III and IV of the third amended complaint.

"II. Whether the trial court erred in granting the Episcopal Diocese of Southern Ohio's motion for summary judgment on Counts II, III and IV of the third amended complaint.

"III. Whether the trial court erred in granting Rev. John Fisher's motion for summary judgment on Counts I, III and IV of the third amended complaint."

Plaintiff served some ten years as parish secretary of defendant St. James Episcopal Church prior to the arrival of defendant Father Fisher from Billings, Montana, in January 1988 to serve as rector of the church. Approximately six months later, plaintiff was fired as parish secretary by Father Fisher after she had asserted sexual harassment complaints against defendant Father Fisher with both the church and with the diocese. Initially, plaintiff contacted the bishop of the diocese with her complaint. He promised to make an investigation and apparently did, but concluded that, although he believed she was sincere in her allegations, there was nothing that he could do because defendant Father Fisher denied the allegations, and the bishop felt he could not resolve the credibility issue. The bishop did, during the investigation, order the work hours of plaintiff and defendant Fisher to be so staggered that they would not be working at the same time.

After hearing that the bishop would take no further action, plaintiff wrote to the standing committee of the diocese, the vestry, the warden, defendant Father Fisher, and the bishop in an attempt to resolve what she termed as "this terrible problem." Upon receipt of this letter, defendant Father Fisher called the chancellor of the diocese, who advised defendant Fisher to fire plaintiff. Defendant Fisher was instructed by the vestry of the church to notify the parish that plaintiff had been fired and to give a reason. Defendant Fisher then published in the parish newsletter a statement that plaintiff was engaging in an openly malicious endeavor to discredit defendant Fisher.

Subsequently, plaintiff brought this action, and, by her third amended complaint, she sets forth four claims for relief: the first for sexual harassment, including retaliatory discharge; the second for intentional and negligent infliction of emotional distress; the third for invasion of privacy; and the fourth for defamation. The trial court sustained motions for summary judgment for defendants church and diocese, with a finding of no just cause for delay. The appeal in case No. 90AP–756 is from this judgment. Thereafter, the trial court sustained a motion for summary judgment as to defendant Fisher, except with respect to count two of the complaint for intentional and negligent infliction of emotional distress. Thereafter, defendant Fisher dismissed a counterclaim he had filed against plaintiff, and plaintiff dismissed count two of her complaint against Fisher, both without prejudice. An appeal was then taken by plaintiff from the summary judgment granted to Fisher which is case No. 90AP–912. The cases were consolidated for hearing and were briefed and argued together.

The parties submitted numerous depositions and affidavits in support and opposition to the motions for summary judgment. In granting summary judgment to the diocese, the trial court found that "[t]he diocese effectively has no control over the employment decisions of St. James or its employees." Accordingly, the court found that the church (St. James) and the diocese were not a single employer but, instead, had a voluntary ecclesiastical relationship. The trial court found that the church (St. James) was the employer of plaintiff but that:

" * * * Defendant Fisher was acting neither directly nor indirectly for the Church if he were engaged in sexual harassment. To put it another way, there is no evidence that Fisher was acting within the scope of his employment when engaged in alleged sexual harassment. * * * Any action by Fisher would appear to have been from intensely personal motives. In no way was he serving to promote the business of his employer. * * * "

Then, the trial court found that Count I did not apply to defendant Fisher because he did not meet the definition of a "private employer" as set forth in R.C. 4112.01(A). For these reasons, the trial court dismissed the sexual harassment claim as to all defendants.

As to Count II (intentional and negligent infliction of emotional distress), the trial court stated in part: " * * * [T]he Court finds no evidence that the Diocese acted in an extreme or outrageous manner. Absent any such conduct, the Court must sustain summary judgment for the Diocese. * * * " The trial court made the same finding with respect to the church and found that neither entity could be held vicariously liable for the reason that defendant Fisher must have been acting outside the scope of his duties if he committed such conduct. As to the third claim, invasion of privacy, the court found no evidence supporting such a claim, finding no allegations indicating invasion of privacy. Similarly, as to the defamation claim, the trial court found that, at most, the alleged defamation was libel *per quod* and, there being no allegation of special damages, summary judgment should be granted. The court did not discuss the issue of qualified privilege.

■ By the first assignment of error, plaintiff contends that the trial court erred in granting summary judgment to defendant St. James Episcopal Church ("St. James"). From reading the trial court's decision, it is quite apparent that the trial court did not apply the summary judgment standard in rendering its decision but, instead, resolved the factual conflicts in favor of defendants. The trial court did not refer to the summary judgment standard but, instead, repeatedly referred to the evidence not being sufficient to establish certain points.

For summary judgment, the evidence must be construed most strongly in favor of the party against whom the motion is directed, and the granting of summary judgment is appropriate only if, when so construed, the evidence is such as to demonstrate that there is no genuine issue of fact and that reasonable minds could only conclude factually in favor of the moving party. See Civ.R. 56(C).

Construing the evidence most strongly in favor of plaintiff, there is at least a question of fact as to the employment relationship between defendant St. James and defendant Fisher. In fact, the trial court apparently found such relationship to exist, rejecting defendants' claim that Fisher was an independent contractor of defendant St. James. However, the trial court found that defendant Fisher could not be acting within the scope of his employment with defendant St. James since sexual harassment is not appropriate conduct and most certainly does not constitute part of the job duties of a pastor at a church.

This, however, is not the determinative test of scope of employment in this case. Under such a theory, an employer could always avoid responsibility for any negligence of its employee by merely indicating that it was the duty of the employee to act properly at all times. The situation here is different from that in *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584. This case involves the church as an employer and its responsibility for sexual harassment by the person to whom it delegated supervisory (and hiring) authority. *Byrd* involved the strictly religious aspects of the church and its relationship to parishioners (not employees) and its pastor. The court held to the effect that a church is not liable for nonconsensual sexual conduct between a pastor and a parishioner. Cf. *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428.

When the evidence is construed most strongly in favor of plaintiff, it is quite clear that the alleged sexual harassment did occur within the scope of defendant Fisher's employment with defendant St. James. He was the supervisor of plaintiff, and most of the alleged sexual harassment took place during working hours at the work place. When plaintiff complained of the alleged sexual harassment, first, her work was reduced from five days to three days (allegedly to avoid contact between the two), and, then, she was fired when she persisted in her complaint.

The trial court correctly referred to R.C. 4112.02(A) since R.C. Chapter 4112 provides the exclusive remedy for pure employment discrimination claims. See *Peterson v. Scott Constr. Co.* (1982), 5 Ohio App.3d 203, 5 OBR 466, 451 N.E.2d 1236. Cf. *Kerans, supra.*

The trial court in finding defendant St. James not to be liable for the conduct of its agent, defendant Fisher, indicated that he was not acting within the scope of his employment and was not motivated by desire to serve his employer or to promote the business of his employer but, instead, operated from personal motives, citing *Taylor v. Doctors Hospital* (1985), 21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249. *Taylor* did not involve a supervisor of an employee, but instead, involved a patient of a hospital who was sexually assaulted by a radiology orderly. The court found that an intentional, willful and malicious attack committed by an agent or employee upon a third party constitutes a departure from the scope of employment so that his principal or employer is not liable under the theory of *respondeat superior*.

Sexual harassment is seldom for the benefit of the employer, but, instead, is usually for the benefit of the supervisor who commits the harassment. It is doubtful that any corporation actually authorizes or condones sexual harassment by its supervisors. Nor is such harassment usually designed to further the business of the employer.

Here, the supervisor, defendant Fisher, was the agent through whom the employer, defendant St. James, operated in dealing with its employee, plaintiff. In other words, defendant St. James had delegated to defendant Fisher its responsibilities to provide a proper work environment free from sexual harassment. As pointed out in plaintiff's brief, in *Sparks v. Pilot Freight Carriers, Inc.* (C.A.11, 1987), 830 F.2d 1554, the court held that, under anti-discrimination laws, a supervisor acts as agent of the employer in exercising the authority delegated to him and, thus, the employer is liable for sexual harassment by the supervisor against his employee, even though the employer neither had notice of nor approved the unlawful conduct. Similarly, in *Meritor Savings Bank v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49, Chief Justice (then Justice) Rehnquist stated:

" * * * [T]he courts have consistently held employers liable for the discriminatory discharges of employees by supervisory personnel, whether or not the employer knew, should have known, or approved of the supervisor's actions. * * * " *Id.*, 477 U.S. at 70–71, 106 S.Ct. at 2304, 91 L.Ed.2d at 62.

" * * * [W]e hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. See generally Restatement (Second) of Agency §§ 219–237 (1958). For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability. * * * " *Id.* at 72, 106 S.Ct. at 2408, 91 L.Ed.2d at 63.

In other words, the liability of the employer for "hostile environment" sexual harassment ordinarily presents a question of fact, and the employer is

not insulated from liability merely because the supervisor's motivation was his own gratification. *Meritor Savings Bank* involved a situation where the supervisor induced a female employee to have sexual relations with him, and the Supreme Court found the employer could be found liable for sexual harassment.

In short, the trial court erred in concluding as a matter of law the mere fact that defendant Fisher committed sexual harassment necessarily precludes such conduct from being within the course of employment, even though he was, as defendant St. James's agent, supervisor of the allegedly sexually harassed employee.

■ In addition, in this case, when plaintiff complained to her employer, her work hours were reduced, and, when she persisted in her complaints, she was discharged, albeit by defendant Fisher acting on behalf of defendant St. James. Thus, the claim for retaliatory discharge for complaining about sexual harassment by the supervisor gives rise to a claim against the employer, defendant St. James.

■ Defendant St. James does contend that defendant Fisher was an independent contractor. Even if he were, liability of St. James would not be lessened since it delegated to him performance of its own responsibility toward its employees. However, the evidence, as the trial court indicated, is such as not to support a finding of an independent contractor as a matter of law but, at best, for defendant St. James, presents a question of fact to be resolved by the trier of fact.

■ As to plaintiff's claim of intentional infliction of emotional distress against defendant St. James, the same result must ensue. At this stage, the intentional infliction of emotional distress occurred as a result of plaintiff's complaint of the sexual harassment, not from the sexual harassment alone. Construing the evidence most strongly in favor of plaintiff, first, she was sexually harassed by defendant Fisher, and, when she complained to the diocese and to defendant St. James, she was subjected to a reduction in her work hours. An investigation was conducted after which she was told she was sincere, but credibility could not be resolved. When she persisted in her complaint, she was discharged. Giving plaintiff the benefit of the construction of evidence in her favor, it was the combination of these factors which caused the serious emotional distress. Accordingly, the trial court erred in dismissing her intentional infliction of emotional distress claim against defendant St. James. As held in *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, R.C. Chapter 4112 does not supersede common-law remedies in lieu of relief provided under the statute

since the statute was intended to add to the protection provided to victims of sexual harassment, rather than reduce such protection and remedies.

Turning to the invasion-of-privacy claim, the trial court found no evidence supporting such a claim even against defendant Fisher. We agree. The evidence construed most strongly in favor of plaintiff does not support an invasion-of-privacy claim, sexual harassment in and of itself not constituting an invasion of privacy. Nor were there any public disclosures about plaintiff, although there was one with respect to her husband, but, as we held in *Strutner v. Dispatch Printing Co.* (1982), 2 Ohio App.3d 377, 2 OBR 435, 442 N.E.2d 129, there ordinarily is no vicarious invasion of privacy.

With respect to plaintiff's claim for defamation, the trial court found the alleged defamatory statements were, at most, liable *per quod*, rather than liable *per se*. The trial court then found that plaintiff had not pleaded special damages and did not address the issue of qualified privilege raised by defendants. The trial court erred in this respect. As pointed out by plaintiff, paragraph twenty-five of the third amended complaint does specifically allege special damages arising from the alleged defamation. There is no question but that the alleged defamatory statement was in writing, that it was published (a letter to members of the congregation of defendant St. James), and that its contents, if not true, would be defamatory.

Defendant St. James and the diocese raise the issue of qualified privilege, which the trial court did not reach. Even assuming there to be a qualified privilege under the circumstances, immunity is not absolute, but instead, the defamation is actionable if the statements were maliciously made. The existence or nonexistence of malice is ordinarily a question of fact to be predicated upon the evidence. Since the trial court did not reach this issue, we feel it is not appropriate for us to determine it at this time in light of our determinations upon the other issues.

Defendant Fisher raises another issue in defense, which was not reached by the trial court, namely, the issue of opinion, relying upon *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1.

Although the statements of opinion are not actionable unless the statements were made with knowledge of their false implication or reckless disregard for the truth, merely using the words "in my opinion" does not invoke such rule. Here, as the Supreme Court found in *Milkovich*, the defamatory implications from the letter constitute a factual issue and could not be appropriately determined as a matter of law. For the above-stated reasons, the first assignment of error is well taken except with respect to the count of the complaint for invasion of privacy.

By the second assignment of error, plaintiff contends that the trial court erred in dismissing plaintiff's claims as against defendant Episcopal Diocese of Southern Ohio. We find no error. Construing the evidence most strongly in favor of plaintiff, we find no basis for any of plaintiff's four claims as against the diocese. Plaintiff now concedes that the diocese is not responsible for the conduct of Reverend Fisher, is not her employer, and has, in effect, withdrawn her claim against the diocese under R.C. 4112.99, the first claim in the complaint.

Plaintiff persists in her claim, however, that defendant Fisher was an agent of defendant diocese. There are two factors involved. First, the ecclesiastical relationship as to which there is a connection between the priest and the diocese and the bishop of the diocese. The second aspect is that which is involved herein, namely, the more secular aspect of employment and day-to-day operation of a church. As to the secular capacities, defendant Fisher acted on behalf of defendant St. James, not the diocese. Although defendant Fisher sought advice from the bishop, and the bishop investigated plaintiff's complaints, this does not make the diocese liable for the conduct of defendant Fisher or defendant St. James.

The only other factor is that defendant Fisher consulted the chancellor of the diocese before discharging plaintiff and was advised by the chancellor to discharge plaintiff. The fact that the chancellor gave extremely poor legal advice does not give rise to a claim of intentional infliction of emotional distress against the diocese, much less the claims for invasion of privacy and defamation.

However, as to the defamation claim, plaintiff contends that the diocese, acting through an arch deacon of the diocese, advised defendant Fisher what to write in the allegedly defamatory letter. Nevertheless, they did not make the publication that of the diocese. The publication was that of defendant Fisher and defendant St. James. Accordingly, the trial court did not err in dismissing plaintiff's claims as against defendant diocese. The second assignment of error is not well taken.

By her third assignment of error, plaintiff contends that the trial court erred in granting summary judgment for defendant Fisher upon plaintiff's claims for sexual harassment, invasion of privacy, and defamation. The trial court had overruled defendant Fisher's motion for summary judgment with respect to plaintiff's claim for intentional infliction of emotional distress, but plaintiff voluntarily dismissed this claim without prejudice as set forth above.

For the reasons set forth above in connection with the first assignment of error, the trial court erred in granting summary judgment for defendant Fisher and dismissing plaintiff's claim for defamation and did not err in granting summary judgment in favor of defendant Fisher and dismissing plaintiff's claim for invasion of privacy.

Essentially, for the reasons set forth above, but for one additional reason, the trial court erred in granting defendant Fisher's motion for summary judgment as to plaintiff's first claim, for sexual harassment under R.C. 4112.99, and dismissing that claim against defendant Fisher. The trial court in dismissing the claim for sexual harassment as against defendant Fisher found that he did not have four or more employees and, thus, was not subject to R.C. Chapter 4112. Although this would be correct if defendant Fisher, rather than defendant St. James, were the employer involved, the trial court specifically found there to be at least a question of fact as to whether defendant St. James had more than four employees. R.C. 4112.01(A) defines "employer" in part as including "[a]ny person employing four or more persons within the state, and any person acting in the interest of an employer, directly or indirectly." Clearly, the supervisor for whom an employer may be vicariously liable under the doctrine of *respondeat superior* is also an employer within this definition. Thus, the trial court erred in dismissing plaintiff's claim for sexual harassment as against defendant Fisher. The third assignment of error is well taken.

For the foregoing reasons, the first and third assignments of error are sustained except with respect to plaintiff's claim for invasion of privacy; her second assignment of error is overruled; the judgments of the Franklin County Court of Common Pleas are reversed; and these causes are remanded to that court with instructions to modify its order granting summary judgment so as to grant summary judgment in favor of defendant St. James Episcopal Church and defendant Reverend John Fisher only with respect to plaintiff's claim for invasion of privacy, to grant summary judgment in favor of defendant Episcopal Diocese of Southern Ohio upon all claims in the complaint, and to dismiss the action as against said diocese, and for such further proceedings in accordance with law as may be consistent with this opinion.

*Judgments reversed*
*and causes remanded*
*with instructions.*

PEGGY BRYANT and GRIGSBY, JJ., concur.

JOSEPH B. GRIGSBY, J., retired, of the Court of Common Pleas of Union County, sitting by assignment.