JOURNAL ENTRY and OPINION
Appellant Howard Goe appeals the trial court's decision granting summary judgment to appellees Allen Sugar Company and Thomas Crynick on Goe's claims for wrongful discharge, age discrimination, and promissory estoppel. Goe assigns three errors for our review.
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM.
 II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S TORT OF WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIM (GREELEY CLAIM).
 III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S CLAIM FOR AGE DISCRIMINATION UNDER O.R.C. 4112.02 AND 4112.99.
After reviewing the record and the arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
Appellant Howard Goe filed an action against his former employer Allen Sugar Company and its Plant Manager Thomas Crynick alleging age discrimination[1] and wrongful discharge. In his complaint, Goe alleged that he was employed at Allen Sugar as a Production Manager and that his duties included the purchasing of supplies. Goe alleged that, in the Fall of 1998, he located an alternate vendor, Bob Cegar of Northcoast D.S, to provide the boxes used by Allen Sugar. According to the complaint, the alternate vendor agreed to supply the boxes at a cost of $699 per thousand a price substantially less than the $898 per thousand that Allen Sugar was paying to its current vendor, The Stephen Gould Company.
Goe alleged that, although he informed his Plant Manager, Thomas Crynick, of the possible cost savings, Crynick opted to continue using Gould to supply the boxes at a price of $734 per thousand, lower than before, but more than the $699 per thousand proposed by the alternate vendor. Goe alleged that, after the discussion with Crynick, he began receiving conflicting and nonsensical instructions from the defendants which led to his termination on March 19, 1999.
Goe alleged that, before the discussion about the boxes, Allen was very impressed with his work and that he had been promoted quickly and had received several salary increases. He also alleged that, during the course of his employment, he had been repeatedly assured that he could expect a long and rewarding career at Allen and that employees could only be terminated after the Company identified deficiencies, imposed progressive discipline, and documented a good cause for termination.
Goe claimed that his termination was motivated, in part, by his age in violation of R.C. 4112.02(A). He also alleged that his termination violated Ohio public policy and was motivated, in part, by his knowledge that Allen Sugar was purchasing goods at above market price from one or more vendors that had provided gifts to Crynick. He also alleged that his termination without just cause violated Company policy that he would be terminated only after progressive discipline and only for just cause. Goe sought to be reinstated to his job with back pay, an award of $1,000,000 in back pay, lost fringe benefits, future pay, and benefits, an award of $1,000,000 for emotional distress and loss of reputation, $2,000,000 in punitive damages, attorneys' fees and costs.
In their answer, Allen Sugar and Crynick generally denied that it violated the law and that Goe was barred from seeking relief to the extent that he failed to mitigate his damages. Allen Sugar and Crynick later filed a motion for summary judgment alleging that Goe was terminated due to continued poor performance of the 4-pound production line and reorganization of the labor workforce due to decreased production volume and rising finished product inventories. Crynick could not be held individually liable for age discrimination under R.C. 4112.02
and that Goe could not establish a prima facie case of age discrimination because he cannot demonstrate that he was replaced by a younger employee. Allen Sugar and Crynick also alleged that, even if Goe could establish a prima facie case, he could not demonstrate that his termination was a pretext for unlawful discrimination. The defendants also argued that Goe could not establish that his knowledge of gratuities accepted by Crynick was related to his termination and that Goe failed to establish a clear, unambiguous promise of continued employment sufficient to support a claim of promissory estoppel or reasonable reliance on such a promise.
In response to the motion for summary judgment, Goe argued that his problems at Allen Sugar began after he presented Crynick with the lower competing bid. He also argued that Allen Sugar failed to comply with its Progressive Discipline Policy which required the issuance of verbal and written warnings before termination. He also argued that, although the four-pound line continued to lose money after his termination, Allen Sugar did not discipline, suspend, or terminate his replacement, Darrell Lubinsky, who was under forty (40) years of age.
The trial court rendered summary judgment in favor of Allen Sugar and Crynick without opinion. This appeal followed.
In his first assignment of error, Goe argues the trial court erred in granting summary judgment in favor of Allen Sugar and Crynick on Goe's promissory estoppel claim. Goe argues that Allen Sugar's progressive treatment policy and the way he was treated by company management led him to believe that he would not be terminated absent just cause. He also argues that he accepted the job at Allen Sugar because he believed he would have job security and that he did not seek other employment because he believed his job to be secure.
Under the employment-at-will doctrine, an employee may be discharged at any time and good cause need not be shown. Clark v. Collins Bus Corp. (2000), 136 Ohio App.3d 448, 736 N.E.2d 970, citing Wright v. Honda of Am. Mfg. Inc. (1995), 73 Ohio St.3d 571, 574, 653 N.E.2d 381, 384. The Ohio Supreme Court recognizes two exceptions to the employment-at-will doctrine implied or express contractual provisions which alter the terms of discharge and promissory estoppel where the employee reasonably relies on representations or promises made by the employer. Clark, citing Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 104-105,483 N.E.2d 150, 154-155. When determining whether one of the exceptions to the employment-at-will rule is applicable, the court must consider the history of relations between the employer and employee, and the facts and circumstances surrounding the employment-at-will relationship including the character of the employment, custom, the course of dealing between the parties, company policy, or any other pertinent facts. Mers,19 Ohio St.3d at 104, 483 N.E.2d at 154. A court may also consider information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy. Wright, 73 Ohio St.3d at 575, 653 N.E.2d at 384. See, also, Karnes v. Doctors Hosp. (1990), 51 Ohio St.3d 139, 141, 555 N.E.2d 280, 282.
Generally, items such as employer handbooks, company policy or oral representations do not create employee rights which alter the at-will nature of employment unless the parties have a meeting of the minds indicating that such items are to be considered valid contracts altering the terms for discharge. Bartlett v. Daniel Drake Memorial Hospital (1991), 75 Ohio App.3d 334, 338, 599 N.E.2d 403, 406. Where there is no such mutual assent, they are merely unilateral statements of company rules and regulations. Id.; Tohline v. Central Trust Co., N.A. (1988),48 Ohio App.3d 280, 282, 549 N.E.2d 1223, 1227, jurisdictional motions overruled (1989), 41 Ohio St.3d 703, 534 N.E.2d 1202; Walker v. PG (Oct. 2, 1996), Hamilton App. No. C-950188, unreported.
Goe has not gone forward with any evidence that there was a meeting of the minds between himself and Allen Sugar or Crynick that altered the terms upon which he could be discharged. In his deposition, Goe admitted that no person at Allen Sugar promised him continued employment.
 Q: Who assured you that you could expect a long and rewarding career?
 A: It's not so much a person. It was the wage increases. It's what Vince Crynick thought of me. It's what Tom thought of me. It's people's stories there that you never get fired from Allen Sugar.
* * *
 Q: So it wasn't that someone told you that specifically?
 A: No. I mean just in conversations when you talk to people. They say it was like a government job. I mean, they don't fire nobody here if you do a good job. No specific people. It was just comments here or comments there just from talking, just in passing.
(Goe Deposition at 125-126.)
Goe also admitted that no person at Allen Sugar told him that company policy provided that employees could only be terminated after the company identified deficiencies, imposed progressive discipline, and documented a good cause for termination. He stated that it was more in what was happening, you know, that way we handled things, policies and so on. It wasn't like an individual. (Goe Deposition at 127.)
Goe did not go forward with evidence of a clear, unambiguous, and specific promise of job security that would support his promissory estoppel claim. Accordingly, summary judgment was properly granted in favor of Allen Sugar. Goe's first assignment of error is without merit.
In his second assignment of error, Goe argues the trial court erred in granting summary judgment in favor of Allen Sugar and Crynick on his claim for wrongful discharge in violation of public policy. A public policy exception to the employment-at-will doctrine is recognized when an employee is discharged or disciplined for a reason that is prohibited by statute or when some other equally important public policy is violated. Greeley v. Miami Valley Maintenance Contractors (1990), 49 Ohio St.3d 228,234-235, 551 N.E.2d 981, 987. Kulch v. Structural Fibers (1997),78 Ohio St.3d 134, 149, 677 N.E.2d 308, 320, reconsideration denied (1997), 79 Ohio St.3d 1422, 680 N.E.2d 158. See, also, Vitale v. Modern Tool Die Company (June 22, 2000), Cuyahoga App. No. 76247, unreported. (A clear public policy can be based on legislation and/or common law.)
In order to set forth a claim for wrongful discharge in violation of public policy, a plaintiff must show:
 1. That a clear public policy existed and was manifested in a federal or state constitution, statute or administrative regulation, or in the common law (the clarity element). 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element). 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element). 4.
 The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).
2000 Ohio App. LEXIS 2734, Wilmot v. Forest City Auto Parts (June 22, 2000), Cuyahoga App. No. 75945, unreported, discretionary appeal not allowed (Oct. 25, 2000), 2000 Ohio LEXIS 2770. See, also, Berge v. Columbus Community Cable Access, 1999 Ohio App. LEXIS 6455 (Dec. 23, 1999), Franklin App. Nos. 99AP-75 and 99AP-76, discretionary appeal not allowed (2000), 88 Ohio St.3d 1503, 727 N.E.2d 925.
In general, an at-will employee can be terminated any time, with or without just cause. Wright v. Honda of Am. Mfg. Inc. (1995),73 Ohio St.3d 571, 574, 653 N.E.2d 381, 384. Termination of an at-will employee is wrongful if the termination was against a clear public policy. Painter v. Graley (1994), 70 Ohio St.3d 377, 383, 639 N.E.2d 51,56, reconsideration denied (1994), 70 Ohio St.3d 1477, 640 N.E.2d 849. A clear public policy can be based on legislation and/or common law. Vitale v. Modern Tool Die Company (June 22, 2000), Cuyahoga App. No. 76247, unreported.
Goe argues that he was fired because he was aware that Crynick was buying boxes from the Stephen Gould Company at more than the market price in exchange for gifts such as trips and tickets to sporting events. He argues that Crynick breached a duty of loyalty to Allen Sugar by serving his own interest instead of that of the company. However, in his deposition, Goe admitted that he also received gifts from the same supplier including tickets to baseball and basketball games, a Christmas wreath, and several shirts. (Goe Deposition at 139-140.)
We conclude that Goe has failed to set forth a clear public policy that was implicated by his discharge. Crynick admitted that Goe provided him with a lower quote for boxes but added that he told Goe he wanted to know the exact construction of all the liners of the boxes. Crynick said Goe never provided him with that information. (Crynick Deposition at 112.) As a result, Crynick was unable to determine whether the competitor's boxes would have met the company's needs. Crynick stated he was concerned that the competitor was just trying to come in and lowball to get the business. Under the circumstances, Goe has not established that Crynick breached a duty of loyalty to Allen Sugar by continuing to use Stephen Gould Company as a supplier.
Goe argues that his problems with Crynick began in the fall of 1998, just after he brought Crynick the quote from an alternate supplier that was significantly lower than the price being paid to Stephen Gould Company. However, Goe also admitted that, beginning in October 1998, production was down on the 4-pound line for which he was responsible and that the machines were not being properly maintained. (Goe Deposition at 77.) Crynick stated that Goe's failure to properly supervise machine operators to maintain the machines caused frequent malfunctions and resulted in decreased productivity. (Crynick Deposition at 51.) Goe admitted that Crynick gave him suggestions on how to improve production on the 4-pound line. He also admitted that by January 1999, his sole responsibility was the four-pound line. (Goe Deposition at 104.) Crynick stated that he wanted Goe to focus his attention on the four-pound line until he got it straightened out. (Crynick Deposition at 53.) Goe admitted that the four-pound production line was causing the biggest bottleneck in the plant. (Goe Deposition at 109.) Crynick told Goe he was being fired due to the lack of production on the four-pound line. Under the circumstances, we conclude that Goe has failed to establish that his termination was caused by his knowledge that Crynick was accepting gifts, rather than the production problems on the 4-pound line.
Due to the decline in productivity, Allen Sugar had a legitimate overriding business justification for firing Goe. His admission that his productivity was down negates his claim that his knowledge of gifts received by Crynick motivated his termination. Accordingly, the trial court did not err in granting summary judgment in favor of Allen Sugar and Crynick on Goe's claim of wrongful discharge in violation of public policy. Goe's second assignment of error is overruled.
In his third assignment of error, Goe argues the trial court erred in granting summary judgment in favor of Allen Sugar and Crynick on his age discrimination claim. He argues that he set forth a prima facie case of age discrimination. He also argues that R.C. 4112.99 allows age discrimination actions to be brought against individuals.
We agree with Goe that, under R.C. 4112.99, supervisors may be personally liable for discriminatory conduct. See Genaro v. Central Transport (1999), 84 Ohio St.3d 293, 300, 703 N.E.2d 782, 787-788.
 This court has noted in numerous cases the existence of a strong public policy against discrimination. A majority of this court have, time and time again, found that there is no place in this state for any sort of discrimination no matter its size, shape, or form or in what clothes it might masquerade.
 This, of course, includes discrimination in the workplace. * * * Ohio's statutory framework and case law reflect Ohio's strong public policy against workplace discrimination. By holding supervisors and managers individually liable for their discriminatory actions, the antidiscrimination purposes of R.C. Chapter 4112 are facilitated, thereby furthering the public policy goals of this state regarding workplace discrimination.
Genaro, 84 Ohio St.3d at 296, 703 N.E.2d at 785. See, also, Davis v. Black (1991), 70 Ohio App.3d 359, 370, 591 N.E.2d 11, 19.
However, we conclude that the trial court properly granted summary judgment in favor of Allen Sugar Crynick on Goe's age discrimination claim. To set forth a prima facie case of age discrimination in a employment discharge action, the plaintiff must show (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Mauzy v. Kelly Servs. (1996),75 Ohio St.3d 578, 582, 664 N.E.2d 1272, 1276, citing Barker v. Scovill, Inc. (1983), 6 Ohio St.3d 146, 147-148, 451 N.E.2d 807, 809.
If the plaintiff presents a prima facie case of discrimination, then the defendant may overcome the presumption by going forward with a legitimate, nondiscriminatory reason for the discharge. If he does so, the plaintiff must show that the defendant's rationale was only a pretext for unlawful discrimination. Mauzy, 75 Ohio St.3d at 582,664 N.E.2d at 1276. See, also, Wilmot v. Forest City Auto Parts (June 22, 2000), Cuyahoga App. No. 75945, unreported.
As set forth in our discussion of Goe's second assignment of error, Allen Sugar had a legitimate nondiscriminatory reason for firing Goe declining production on the 4-pound line. Goe argues that the stated reason was pretextual in light of the company's failure to discipline or discharge his replacement when production continued to decline after his discharge. However, Crynick explained that it took several months to resolve the production problems after Goe's termination and that the line was intentionally shut down for two months in 1999. Thereafter, he added that production variances remained but they were still better than during the months prior to Goe's termination.
We find that Goe failed to demonstrate that Allen Sugar's stated reason for firing him was pretextual. Accordingly, we overrule his third assignment of error.
Having found no merit to any of Goe's assignments of error, we affirm the decision of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] In his deposition, Goe stated that he would turn 59 in January of 2000. Therefore, at the time of his termination in March of 1999, he was 58 years of age.